UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:13-cv-19-RJC

| | | |
|---|---|---|
| GENE WAYNE HAYMOND, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PAT CHAVIS, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on consideration of Respondent's motion for

summary judgment on the claims presented by Petitioner in his petition for a writ of habeas

corpus, filed pursuant to 28 U.S.C. § 2254. For the reasons that follow, Respondent's motion will

granted and Petitioner's Section 2254 petition will be denied and dismissed.

I.      **BACKGROUND**

Petitioner is a prisoner of the State of North Carolina who was convicted by a Wilkes

County jury on charges of felonious breaking or entering, felonious possession of stolen

property, possession of a firearm by a felon, and for having attained the status of a habitual felon.

The state court sentenced Petitioner to a ten consecutive terms of 116 to 149 months'

imprisonment and he appealed.

The North Carolina Court of Appeals summarized the evidence presented:

> Defendant appeared, with counsel, before the trial court at a
> hearing on 7 January 2008, at which time the State offered
> defendant a plea arrangement. Defendant requested to address the
> court, but before allowing him to do so, the trial court advised
> defendant that any statement made by him could be used against him.
> Defendant initially requested a continuance in order to employ

1

different counsel, and then made statements to the court in which he admitted complicity and asked the trial court, in light of his cooperation with the authorities, to impose a lesser sentence than that offered by the prosecutor. The trial court refused to do so and advised defendant as to the consequences of accepting or rejecting the plea arrangement offered by the State. Defendant was given a further opportunity to discuss the plea arrangement with his counsel over the evening recess. On the following day, defendant rejected the plea arrangement. Defendant subsequently waived his right to the assistance of counsel and proceeded *pro se*.

Defendant moved to suppress all evidence seized as a result of a search by law enforcement officers, pursuant to a search warrant, of a residence at 515 Corporation Street, Wilkesboro, North Carolina. Defendant alleged that the application for issuance of the search warrant was insufficient to establish probable cause for its issuance.

The evidence at the suppression hearings tended to show that in January 2007, Detective Peyton Colvard ("Detective Colvard") of the Ashe County Sheriff's Department was investigating a break-in of New River Outfitters and larceny of items therein, which occurred in late December 2006 or early January 2007. On 19 January 2007, while processing the scene for latent fingerprints, Detective Colvard found a business card and vehicle registration in the leaves outside the back door of New River Outfitters. Both items contained defendant's name and the address 515 Corporation Street, Wilkesboro, North Carolina. After discussing this evidence with other officers, Detective Colvard recalled that defendant had been involved in prior break-ins in Ashe County. Detective Colvard then called Captain John Summers ("Captain Summers") of the Wilkes County Sheriff's Department and asked him to ride by the address shown on the cards, which was in Wilkes County, to see if he could identify any items that had been stolen from New River Outfitters. When Captain Summers rode by the house, the only item he spotted was a stainless steel grill sitting on the porch.

When Detective Colvard heard about the grill, he recalled that a stainless steel grill had been taken from the summer home of Randy Miller ("Mr. Miller") in mid–December 2006. Suspecting the grill spotted on the porch of the house might be Mr. Miller's, Detective Colvard contacted Mr. Miller and requested that he drive by the house to see if he could identify it. When Mr. Miller drove by the house, he was "80 percent sure" the grill on the porch was

his. On 22 January 2007, Detective Colvard took Mr. Miller back to the house. On this occasion, both Detective Colvard and Mr. Miller got out of the car and walked through the yard to the porch. At this point, Mr. Miller positively identified the grill as the one stolen from his vacation home.

Detective Colvard then applied for a search warrant for 515 Corporation Street, Wilkesboro, North Carolina. In his Probable Cause Affidavit, Detective Colvard provided the magistrate with the information concerning the discovery of defendant's business card and vehicle registration at New River Outfitters. He also indicated that he had "observed a coastal stainless steel grill on [defendant's] side porch" and that "this grill matched the description of a grill stolen on December 23, 2006." As additional information, Detective Colvard indicated that the victim "identified the grill as being his" after going by defendant's house. According to Detective Colvard, "[t]he victim was certain of this because of a black bungee cord that he had applied to the grill." Finally, Detective Colvard indicated his familiarity with defendant's prior convictions for breaking or entering. Based on this information, the magistrate issued a search warrant for defendant's home, authorizing Detective Colvard to search for the grill and various items stolen from New River Outfitters.

Soon after obtaining the search warrant, Detective Colvard contacted Detective William David Carson ("Detective Carson") to help execute the search warrant. Since defendant's home was located in Wilkesboro, Lieutenant Rhodes of the Wilkesboro Police Department was called to assist in the search as well. When the detectives arrived, no one was at home. They attempted to contact Dawn Matthews ("Ms. Matthews"), the owner of the house, but could not get in touch with her. They then called the number on the business card found at New River Outfitters, and defendant answered. They told defendant they had a warrant to search his house and instructed him to return to his home. Two hours later, defendant arrived at the house, and Detective Colvard served him with the search warrant. Defendant read over the search warrant and indicated that "almost all" of the items on the search warrant were in the house.

Defendant let the officers into the house. The officers searched various rooms in the house, including the basement and the kitchen. They found many of the items identified on the search warrant. They also found numerous other items that were identified

as items taken during various reported break-ins in Wilkes County. In the weeks following the search, defendant recovered and returned various other stolen items to the officers, including rifles and parts of a safe which had all been stolen from Lowe Fur and Herb, Inc. Some of the items recovered were determined to be those taken during break-ins of William Pelon's ("Mr. Pelon") residence, Jeffrey Ritch's ("Mr. Ritch") residence, Sherry Gambill's ("Ms. Gambill") residence, and the Lowe Fur and Herb, Inc. business. A computer was found that was determined to have been stolen from Robert Mittet ("Mr. Mittet").

The trial court concluded that the application for the search warrant was sufficient to establish probable cause to search the residence for evidence relating to the Ashe County break-ins and that all of the other items seized, relating to the Wilkes County break-ins, were in plain view of the officers, with the exception of a television set which the officers moved in order to ascertain a serial number and some clothing which the officers found in closed drawers. Thus, the motion to suppress was denied except as to the television and the clothing, which were excluded.

In addition, defendant moved to suppress evidence of a letter dated 9 November 2007 which he directed to an assistant district attorney, various statements which he made to police officers during both the search of his house and plea discussions, and the statements which he made during the 7 January 2008 court appearance. The trial court ruled that the letter and statements made by defendant during plea discussions were inadmissible; however, the court ruled that defendant's statements made during the search were admissible because defendant was not under arrest at the time they were made, requiring no *Miranda* warning. The statements made by defendant at the 7 January 2008 hearing were also ruled admissible but only for impeachment purposes.

The State's evidence at trial was substantially the same as Detective Colvard's testimony with respect to his investigation of the New River Outfitters break-in and the subsequent search and seizure of stolen items from defendant's residence. Mr. Pelon testified that he owned a second home in Wilkes County and that he was having some remodeling work done on the house in June 2006. In that month, the house was broken into and personal property belonging to Mr. Pelon, as well as some tools belonging to his contractor, were stolen. The State offered evidence that a number

of the stolen items were found at defendant's home, and others at the home of Jeremy Ebersole, a co-defendant who was tried separately.

Ms. Gambill testified that her home was broken into on or about 15 August 2006 and that a Jen-Air stove, a lawnmower and other personal property was taken. The State offered evidence that the stove was recovered from defendant's home and that defendant himself returned the lawn mower to the Sheriff's department. Daniel Richter testified that he and defendant went to Ms. Gambill's house; Richter went into the house through either a door or a window and took a Jen-Air stove, riding lawnmower, a ladder and some hoses. The items were quickly loaded into defendant's van and they went back to defendant's house, where defendant paid Richter $250.

Richter also testified that he broke into Mr. Mittet's house in June 2006 and took a laptop computer, which he sold to defendant. Richter testified that he told defendant the computer had been stolen.

Sometime during August 2006, a vacation home owned by Mr. Ritch was broken into and various items of furniture, a stove, refrigerator, microwave, and dishwasher were stolen. These items were recovered during the search of defendant's residence.

Lowe's Fur and Herb, Inc. was broken into on 24 November 2006 and various items were stolen, including articles of Carhartt clothing which was part of the company's inventory. In addition, the safe had been broken into and blank checks, invoices, stock certificates and other documents stolen therefrom. In addition, two guns belonging to Arthur Lowe, the owner of the business, were stolen. The clothing was found during the search of defendant's residence, and, following the search, defendant returned the firearms and other documents, which had been taken from the safe, to the sheriff's department.

At the close of the State's evidence, the trial court dismissed the charge of safecracking, but denied defendant's motions to dismiss the remaining charges. Defendant neither testified nor offered evidence in his own behalf, and renewed his motions to dismiss, which were again denied. The jury returned verdicts of guilty on each of the substantive offenses.

Defendant stipulated to having been convicted of the felony of third degree burglary in the State of Delaware on 12 June 1992 for an offense which occurred on 2 September 1991, of felonious breaking or entering and felonious larceny in Watauga County, North Carolina, on 7 September 2000 for an offense which occurred on 12 September 1999, and of felonious larceny in Wilkes County, North Carolina, on 5 June 2001 for an offense which occurred on 25 October 2000. The jury then found defendant guilty of having attained the status of an habitual felon. The trial court arrested judgment on each of the felonious larceny convictions. The trial court then determined that defendant had eight prior record level points and a prior record level of III, and entered judgment sentencing defendant in the presumptive range to a minimum term of 116 months and a maximum term of 149 months as an habitual felon for each of the ten felonies, to be served consecutively.

State v. Haymond, 691 S.E.2d 108, 112-116  (N.C. Ct. App. 2010).

On appeal, Petitioner challenged the trial court's denial of his motion to suppress contending that Detective Colvard purposefully withheld material facts in the application for the search warrant, and that if these omitted facts had been included in the application, the magistrate judge would have concluded that no probable cause existed. Petitioner also challenged the trial court's denial of his motion to suppress the discovery of certain stolen items that law enforcement recovered from his home during the course of executing the search warrant. The court of appeals rejected Petitioner's challenges and affirmed the trial court's orders on suppression.

Petitioner raised additional challenges contending that the trial court impermissibly influenced his decision on whether to testify, and allowed statements made during a pretrial hearing to be used against him even though Petitioner, as he argues, was making the statements during plea negotiations with the State. The court of appeals found no merit in these contentions.

Finally, the court of appeals found merit in Petitioner's challenge to the sufficiency of the

evidence that was presented in support of three convictions for breaking or entering and the State conceded that it had failed to meet its burden of presenting such evidence. Id. at 122. The court of appeals therefore reversed these three convictions and upheld all other convictions but remanded those convictions to the trial court for a new sentencing hearing. The court found that the record revealed the trial court may have imposed consecutive sentences based on Petitioner's decision to take his case to trial rather than accept the State's plea offer. Id. at 176-177. Petitioner's petition for discretionary review of the court of appeals order was denied. State v. Haymond, 364 N.C. 600 (N.C. 2010).

On remand, the trial court sentenced Petitioner to three consecutive terms of 96 to 125 months' imprisonment. Petitioner appealed and this time argued that the trial erred in assigning him two criminal record points for a conviction he sustained in Delaware for third-degree burglary. The court of appeals found no merit in Petitioner's argument and affirmed the trial court's sentence. State v. Haymond, 712 S.E.2d 747 (N.C. Ct. App. 2011) (unpublished table decision).

Petitioner continued to challenge to his criminal judgment by filing a motion for appropriate relief (MAR) in the Wilkes County Superior Court on April 2, 2012. Petitioner raised eight claims for relief, all of which were rejected by the trial court in a written order filed on November 2, 2012. The court noted that two attorneys had been appointed to represent Petitioner in his collateral proceeding: one withdrew due to a conflict of interest and the second attorney was allowed to withdraw after Petitioner decided to serve as his own counsel. The order discussed each of Petitioner's pro se claims and concluded they were either without merit, had been procedurally defaulted because Petitioner was in a position to have raised the claims on

direct appeal, or the claims were barred because the court of appeals had already issued adverse rulings on the claims. (Doc. No. 8-22: MAR Order).

Petitioner contends that he filed a petition for writ of certiorari that was denied by the court of appeals on January 17, 2013, however he does not attach a copy of the order. (Doc. No. 1 at 11). The Respondent addressed this issue and asserts that there is no record of a petition having been filed with the court of appeals and therefore pleads the affirmative defense of nonexhaustion of state remedies. See 28 U.S.C. § 2254(b)(1)(A) (the district court shall not grant habeas relief unless the record demonstrates that the petitioner has exhausted all available state remedies). (Doc. No. 8: Respondent's Supporting Brief at 24-25). In the alternative, the Respondent moves the Court to resolve Petitioner's grounds for relief because they are without merit.

In his response to the Respondent's motion for summary judgment, Petitioner explains that he placed his petition for a writ of certiorari in the prison mail system on December 25, 2012, for delivery to the court of appeals and the North Carolina Department of Justice, however it appears from this record that neither of the petitions reached the intended recipient. (Doc. No. 13: Petitioner's Response at 2-3). Because it appears that the court of appeals never received the petition for a writ of certiorari, Petitioner moves the Court to either permit him to withdraw his § 2254 petition which would allow him to petition the court of appeals and therefore exhaust his state remedies if the petition were denied, or in the alternative, Petitioner moves the Court to consider his § 2254 on the merits. (Id. at 4). The Court finds that Petitioner has provided evidence through his verified § 2254 petition, (Doc. No. 1 at 15), and his verified response that he placed a petition for a writ of certiorari in the prison mail system for delivery to the court of

appeals and the North Carolina Department of Justice. <u>See</u> (Exhibits B and C attached to Petitioner's Response).

Based on the foregoing, the Court will grant Petitioner's motion to proceed with a consideration of the merits of his § 2254 petition and the Respondent's response thereto. <u>See</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Petitioner's claims will be addressed in turn below.

## II.     STANDARD OF REVIEW

### A.     Summary Judgment

Summary judgment is appropriate where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); <u>United States v. Lee</u>, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986).

### B.     Section 2254 Proceedings

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides for a constrained level review in a federal habeas proceeding:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## III.   DISCUSSION

### A.     Grounds One and Two

In Ground One, Petitioner challenges his judgment first by maintaining that the state court did not have subject matter jurisdiction to try him on the criminal charges because the court entered its order denying his motion to suppress out of term and out of session. (Doc. No. 1-1 at 3-5). In Ground Two, Petitioner raises a claim of ineffective assistance of appellate counsel because his attorney failed to present the issue of the trial court's subject matter jurisdiction on direct appeal even though he directed her to do so. (Id. at 5-6).

Petitioner raised Ground One in his MAR and the trial court denied relief citing the State's procedural bar after finding that Petitioner was in a position to raise this issue on direct appeal but he failed to do so. See (Doc. No. 8-22 at 2) (citing N.C. Gen. Stat. § 15A-1419(a)(3)). The trial court also concluded that this issue was effectively resolved by the court of appeals when the court denied Petitioner's challenges to the trial court's rulings on his motions to suppress. In consequence, the MAR court found that the court of appeals ruling governed resolution of this issue and became the law of the case. (Id. at 4). Additionally, the MAR court found that Petitioner's first claim was without merit because Petitioner consented in open court to the trial court entering its order on the motions to suppress in an extended session of court and

thereby waived this issue. (Id.) (citing N.C. Gen. Stat. § 15-167) (providing that the superior court judge may extend a session of court if it determines that there is insufficient to time to resolve certain matters).

Petitioner's first claim for relief will be denied. Petitioner contends that his federal constitutional rights have been violated by the entry of the suppression order however the Court finds, as Petitioner conceded in his brief, that North Carolina law is distinct in its governance of the entry of orders within a particular session of court. See (Doc. No. 1-1 at 3-4). Petitioner's argument presents this Court with an issue which is purely one of North Carolina law and "[s]uch an inquiry, however is no part of a federal court's habeas review of a state conviction. We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" Estelle v. McGuire, 502 U.S. 62, 67 (1991) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). The state court adjudicated this state law claim on the merits and this Court will therefore deny relief on this claim.

Petitioner's second ground for relief depends on a finding that his counsel was ineffective in declining to challenge the trial court's entry of an order on the motion to suppress out of term and out of session. This argument will likewise be denied. Although the MAR court denied Petitioner's first claim for relief on procedural grounds, the court also specifically found that Petitioner's argument regarding the first ground for relief was without merit. Thus, the MAR court found that Petitioner's second claim must likewise be without merit based on its conclusion that the superior court lawfully extended the session of court. (Doc. No. 8-22 at 9).[1]

In the suppression hearing, on June 12, 2008, where Petitioner was pro se and with

---

[1] Petitioner's second ground for relief in this federal habeas proceeding was labeled as his eighth claim in the MAR proceeding.

standby counsel, the court received testimony from investigating detectives and documentary evidence and concluded that it did not have ample time to produce a written order ruling on the suppression motions during the current session. Accordingly, the court notified Petitioner and the State of its intention to continue the hearing until a later session. (Doc. No. 28: Suppression Tr. at 286). The court stated that it would secure a commission for a two-week session beginning July 28, 2008, and would enter its ruling on the motions to suppress at that time. (Id. at 287). The trial court asked Petitioner if he had any objection to this procedure and Petitioner, while serving his own counsel, responded that he did not. (Id. at 288). In its closing remarks, the superior court specifically found that Petitioner and the State had agreed to continue the hearing and that the agreement was on the record. (Id. at 289).

Petitioner's contention that his trial was ineffective in failing to raise the issue of subject matter jurisdiction is simply without merit as it is clear from the record that Petitioner specifically agreed to resume the suppression hearing at another session of court. The matter resumed on July 31, 2008, and the court made oral findings of fact and conclusions of law and denied Petitioner's motions to suppress except for one claim in which the court found that stolen clothing that was recovered from Petitioner's house was subject to suppression because its recovery from a closed drawer exceeded the scope of the warrant and was not in plain view. See Haymond, 691 S.E.2d at 120. See also (Doc. No. 29: Suppression Tr., July 31, 2008).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long 'as fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  As the Supreme Court observed, "[i]f this standard is difficult to meet, that is

because it was meant to be." Harrington, supra. See also Richardson v. Branker, 668 F.3d 128,

138 (4th Cir. 2012) ("The limited scope of federal review of a state petitioner's habeas claims, as

established by AEDPA, is grounded in fundamental notions of state sovereignty.") (citing

Harrington, 131 S. Ct. at 787). As the MAR court found that the session was extended without

objection by Petitioner and as expressly allowed by North Carolina law, this claim for ineffective

assistance will be denied as Petitioner has failed to demonstrate any entitlement to relief.

B.      Ground Three

Petitioner next claims that the state court's ruling on his motion to suppress was

erroneous and that his Fourth Amendment rights were violated. In particular, Petitioner contends

that Detective Colvard conducted an illegal search by entering the curtilage of Petitioner's yard

and observing what was later determined to be a stolen grill. Petitioner contends that Detective

Colvard then used the information he collected while in the curtilage as his basis to try and

establish probable cause to secure the search warrant.

The evidence presented at the suppression hearing demonstrated that the grill was in

plain view on the porch of Petitioner's home. On appeal, Petitioner's arguments, which mirror

his present claim, were rejected after the court of appeals found that even if Detective Colvard

did cross into the yard to obtain a closer look at the grill, Petitioner's Fourth Amendment rights

were not violated. The court found:

> [D]efendant contends Detective Colvard's affidavit in
> support of the application for a search warrant omitted the fact,
> disclosed in his testimony, that the officer and Mr. Miller, whose
> grill was stolen in another December 2006 break-in, walked across
> defendant's yard, a possible violation of defendant's Fourth
> Amendment rights, to look at the grill before Mr. Miller was able
> to identify it. Again, we do not believe the omission is material;
> the porch where the grill was located was on the front portion of

the house and was visible from the road, as was the grill. From
that distance, Mr. Miller was "80 percent sure" the grill was his.
Detective Colvard then accompanied Mr. Miller to defendant's house,
where they pulled into the driveway, got out of the car, and walked
through the yard to a point closer to the grill. From a closer
vantage point, Mr. Miller was able to positively identify the grill
as his based on the presence of the black bungee cord. When Mr.
Miller and Detective Colvard walked through the yard, they merely
looked at the grill and left. In doing so, neither Detective
Colvard nor Mr. Miller violated defendant's Fourth Amendment rights.
*See State v. Prevette*, 43 N.C. App. 450, 455, 259 S.E.2d 595, 599-
600 (1979) ("Entrance [by a police officer] onto private property
for the purpose of a general inquiry or interview is proper."),
*appeal dismissed and disc. review denied*, 299 N.C. 124, 261 S.E.2d
925, *cert. denied*, 447 U.S. 906, 64 L. Ed. 2d 855 (1980); *see also
United States v. Knight*, 451 F.2d 275, 278 (5th Cir. 1971) (finding
that, even if the officer's entry onto private property was a
trespass, the act of looking at an item in plain view was not an
illegal search), *cert. denied by Grubbs v. United States*, 405 U.S.
965, 31 L. Ed. 2d 240 (1972). Accordingly, even considering the
alleged omissions, we conclude the affidavit was sufficient to
establish probable cause to believe the stolen items listed would
be found in defendant's home.

The MAR court denied relief upon finding that the court of appeals had already concluded that
Petitioner's challenge to Detective Colvard's entry onto his property was without merit. (Doc.
No. 8-22 at 5).

The Court finds that this claim should be denied because the record does not permit a
finding that the state courts misapplied any controlling Supreme Court law when denying
Petitioner's claim, nor does the record demonstrate that the findings of fact were unreasonable
based on the evidence presented before the trial court. See 28 U.S.C. § 2254(d)(1) and (d)(2).
See id. § 2254(e)(1) (Petitioner bears the burden of rebutting the correctness of the State's factual
findings by clear and convincing evidence). Petitioner has made no such showing.

C.    Ground Four

Petitioner again asserts a claim that would require this Court to determine a question of North Carolina law which has already been the subject of a state court ruling. The court of appeals upheld the denial of Petitioner's motions to suppress the searches which were conducted pursuant to the warrants issued by the magistrate judge, except as noted above. Petitioner argues that the search warrants were not obtained pursuant to North Carolina's mandatory statutory scheme and therefore his Fourteen Amendment rights to due process and equal protection have been violated. (Doc. No. 1-1 at 7). Petitioner maintains that the warrants were defective under North Carolina law because the search warrant was issued without a date and time of issuance. This claim is without merit.

As previously noted, federal habeas review does not exist for alleged errors in the application of state law. See Estelle, 502 U.S. at 67 ("Today, we reemphasize that it is not the province of the federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.") (internal citations omitted). Petitioner's blank assertion that the issuance of the warrant violated his Fourteenth Amendment rights is purely conclusory and will be denied. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) (providing that a federal habeas petitioner has the burden of presenting evidence to support the merits of his claim), abrog'n on other grounds recog'd by, Yeatts v. Angelone, 166 F.3d 255 (4th Cir. 1999).

In addition, as the MAR court found, Petitioner procedurally defaulted this claim by failing to raise it in his direct appeal and he cannot demonstrate actual prejudice or a miscarriage

of justice in this instance to excuse this default. (Doc. No. 8-22 at 6). See Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004). For the foregoing reasons, this claim for relief will be denied.

      D.      <u>Ground Five</u>

Petitioner challenges the trial court's imposition of three consecutive sentences of 96 to 125 months in state prison. (Doc. No. 1-1 at 7-8). Petitioner contends that his sentence violates the Eighth Amendment's prohibition on cruel and unusual punishment because it is disproportional to the sentences meted out on other defendants in Wilkes County and in other jurisdictions in North Carolina. Petitioner cites <u>Graham v. United States</u>, 560 U.S. 48 (2010) in support of his claim. However, the Court finds that Petitioner's reliance on <u>Graham</u> is misplaced.

In <u>Graham</u>, the Court held that imposing a life sentence, without the possibility of parole, on a juvenile offender who committed a nonhomicide offense violated the Eighth Amendment's prohibition on cruel and unusual punishment and the Fourteenth Amendment. In sum, the Court reasoned that a juvenile must have the opportunity to demonstrate his entitlement to release. "The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide. A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." <u>Graham</u>, 560 U.S. at 82.

At the time he was convicted of the 2008 crimes, Petitioner was 37-years old and had a criminal record which stretched back to 1992. (Doc. No. 8-8 at 16). Thus, <u>Graham</u>'s focus on the age of the offender is of no assistance. In its opinion, the Supreme Court examined prior decisions and noted that it has rejected many proportionality challenges under the Eighth Amendment which were made by petitioners based on state recidivist statutes. See <u>Graham</u>, 560

U.S. at 59 (citing <u>Solem v. Helm</u>, 463 U.S. 277 (1983) (life without parole based on seventh nonviolent felony of passing a worthless check); <u>Harmelin v. Michigan</u>, 501 U.S. 957 (1991) (upholding life without parole for possession of a large amount of cocaine); <u>Ewing v. California</u>, 538 U.S. 11 (2003) (upholding a sentence of 25 years to life for conviction of stealing a few golf clubs); <u>Hutto v. Davis</u>, 454 U.S. 370 (1982) (per curiam) (upholding a sentence of 40 years for sentence of 40 years for possession of marijuana with intent to distribute).

Based on this line of precedent, the Court finds that Petitioner is not entitled to relief and this claim will be denied.

E.      <u>Grounds Six and Seven</u>

Here, Petitioner challenges the trial court's judgment imposing restitution in cases that Petitioner contends were vacated by the court of appeals. (Doc. No. 1-1 at 10). Petitioner argues that "no indictment, Plea of Guilty or subsequent conviction existed to grant jurisdiction in these cases." (Doc. No. 16: Petitioner's Response at 42). The court of appeals reversed three convictions in his first appeal after finding that there was insufficient evidence. The convictions are for three counts of felony breaking or entering and the victims were identified as: William Pelon (07CRS881); Jeffrey Ritch (07CRS886); and Lowe Fur and Herb, Inc. (07CRS50466). The remaining convictions were upheld but were remanded for resentencing after the court found that the trial court may have elected to impose ten consecutive sentences based on Petitioner's decision to forego a plea agreement and proceed to trial. <u>See</u> <u>Haymond</u>, 691 S.E.2d at 152, 172.

Petitioner did not raise any challenge to the restitution order on direct appeal from his sentence which was imposed on remand but he did raise it in his MAR proceeding. In its order denying relief, the MAR court applied North Carolina's procedural bar and found that

Petitioner's claim should be dismissed because he did not raise this claim on direct appeal although he was in a position to do so. (Doc. No. 8-22 at 7). The North Carolina law which governs collateral proceedings provides that failure to raise an issue on direct appeal will bar relief in a MAR proceeding if that issue could have been raised on direct appeal but the petitioner failed to do so. See N.C. Gen. Stat. § 15A-1419(a)(3). The statute provides, however, that the merits of a claim that is subject to procedural default may be considered in a collateral proceeding if the petitioner can demonstrate good cause to excuse the failure and actual prejudice which the petitioner would suffer if the court declined to consider the claim or that a miscarriage of justice would ensue if the bar was enforced. Id. § 15A-1419(b)(1) and (2).

Respondent raises the defense of procedural default in support of its motion for summary judgment. The application of North Carolina's procedural bar is mandatory unless the petitioner demonstrates good cause or that a miscarriage of justice would result in its application. See Rose v. Lee, 252 F.3d 676, 683 (4th Cir.) (finding that the North Carolina procedural bar is mandatory in federal habeas proceedings), cert. denied, 534 U.S. 941 (2001). Petitioner was clearly aware of this claim at the time he was resentenced and could have applied to file a supplemental brief raising this issue. It would appear that Petitioner's claim should therefore be denied based on procedural bar. For cause, however Petitioner contends that he repeatedly urged his appellate counsel to present this issue in his second appeal but he refused to do so.

The Court finds in any event that Petitioner's argument is without merit. Petitioner contends that the convictions, for which restitution was ordered, were vacated by the court of appeals and that imposing restitution for vacated convictions is in violation of the Eighth and Fourteenth Amendments. (Doc. No. 1-1 at 10). As is relevant to Petitioner's claim, the Wilkes

County Grand Jury indicted Petitioner on the following offenses:

(1) Felony possession of stolen goods belonging to Jeffrey Ritch and valued at $4,205 (08CRS1470);

(2) Felony possession of stolen property belonging to William Pelon and valued at $1,360.93 (08CRS1474);

(3) Felony possession of stolen property belonging to Robert Mitt and valued at $1,600 (08CRS1471);

(4) Felony possession of stolen goods belonging to Lowe Fur and Herb, Inc. and valued at $3,000 (08CRS1475).

See (Doc. No. 8-8 at 5-10: Indictments). As noted, these convictions for possession of stolen goods involving victims Ritch, Pelon, Mitt and Lowe Fur and Herb, Inc. were upheld with the court of appeals specifically finding there was "No Error at Trial." Haymond, 691 S.E.2d at 171-172. The record provides no evidence to support Petitioner's contention that any restitution was ordered on remand for the three breaking and entering cases that were vacated. In fact, those judgments do not even appear in the record on appeal that was filed in Petitioner's appeal of his sentencing on remand. (Doc. No. 8-8: Record on Appeal).

To the extent Petitioner contends that the restitution orders for Ritch, Pelon, Mitt and Lowe Fur and Herb, Inc. are not supported by competent evidence, this claim fails. Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting this presumption of correctness by clear and convincing evidence." Petitioner offers no such evidence in support of this claim. Nickerson, 971 F.2d at 1136 ("In order to obtain an evidentiary hearing on an

ineffective assistance of counsel claim - - or, for that matter, on any claim - - a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.") (citing Zettlemoyer v. Fulcomer, 923 F.2d 284, 301 (3d Cir.) ("bald assertions and conclusory allegations do not provide sufficient ground . . . to require an evidentiary hearing"; a contrary rule would "encourage meritless petitions burdening judicial resources"), cert. denied, 502 U.S. 902 (1991). And Petitioner's failure to meet his burden to present such evidence in this habeas proceeding will not be remedied by an evidentiary hearing at this stage because he was unable to develop a sufficient evidentiary record in the State proceedings. Id. § 2254(e)(2) (providing that the district court shall not hold an evidentiary hearing on the claim if the petitioner failed to develop an adequate factual record in the State court unless (1) the claim relies on a new rule of constitutional law which the Supreme Court has made retroactively applicable to cases on collateral review or (2) that there is a factual predicate that the petitioner demonstrates that he could not have discovered through due diligence). The Court finds that Petitioner has failed to meet either of these conditions. Moreover, Petitioner has failed to demonstrate that the State court determination opens the door for merit relief under § 2254(d). Accordingly, Petitioner's sixth ground for relief will be denied.

Finally, Petitioner's seventh ground for relief alleges ineffective assistance of appellate counsel. Petitioner relies on this argument in support of his effort to escape procedural default of his restitution claim. In order to establish a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was below a reasonable standard of representation and that petitioner suffered resulting prejudice from the deficient performance. Strickland v.

Washington, 466 U.S. 668 (1984). Petitioner has failed to present sufficient evidence in his bid to challenge the legality of the restitution orders addressed above, both in State court and in this federal habeas proceeding. It follows, then, that Petitioner's claim of ineffective assistance of appellate counsel must fail because his claim necessarily involves a finding that his restitution claim had any merit that would warrant the presentation of the claim on appeal.

## IV.     CONCLUSION

For the reasons stated herein, the Court finds that Petitioner has failed to present any meritorious claims for relief and Respondent's motion for summary judgment will be granted.

**IT IS, THEREFORE ORDERED** that:

1.      Respondent's motion for summary judgment is **GRANTED**. (Doc. No. 7).

2.      The petition for habeas corpus will be denied and dismissed. (Doc. No. 1).

3.      Petitioner's amended motion for extension of time to respond to the motion for summary judgment is **GRANTED**. (Doc. No. 12).

4.      Petitioner's motion to withdraw this habeas petition is **DENIED**. (Doc. No. 13).

 **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of

the denial of a constitutional right).

The Clerk of Court is directed to close this civil case.

**IT IS SO ORDERED.**
Signed:   3/13/2014

Robert J. Conrad, Jr.
United States District Judge